IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2021 JUN 28 AM 11: 31

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

Civil Action Number: 20-cv-03139

ALLSTATE INSURANCE COMPANY,

Plaintiff,

v

JOHN CRUZ,

Defendant.

---

## ANSWER TO COMPLAINT AND COUNTERCLAIMS WITH JURY DEMAND

---

Defendant, John Cruz, by and through counsel, respectfully submits this Answer to

Plaintiff's Complaint, Defendant's Counterclaims and Jury Demand

1. Paragraph 1. The allegations are denied, except as to the fact that Mr. Cruz

executed an Allstate Exclusive Agency Agreement effective April 1, 2010.

2. Paragraph 2. The agreement entered into by the parties speaks for itself. In so far

as the agreement is specifically quoted, the allegations are admitted.

3. Paragraph 3 as alleged is denied.

4. Paragraph 4 as alleged is denied.

5. Paragraph 5 as alleged is denied.

6. Paragraph 6 and 7 as allegations are denied, except for the fact that on

September 30, 2020 Mr. Cruz sent e-mails to certain customers about his future plans.

7. Paragraph 8 as alleged is denied.

8. Paragraph 9 contains no factual allegations and requires no response. If a response is required, the allegations or claims are denied.

9. Paragraph 10 as alleged is admitted.

10. Paragraph 11 as alleged is admitted.

11. Paragraph 12. Jurisdiction of the Federal Court is disputed.

12. Paragraph 13. It is undisputed that Venue is proper if the Court has jurisdiction.

13. Paragraph 14. It is admitted that Plaintiff sells insurance in multiple States in the United States and provides automobile insurance, property and casualty insurance and life insurance to some individuals and some businesses. The balance of the allegations are denied for lack of specificity.

14. Paragraph 15. It is admitted that Mr. Cruz was appointed to sell certain insurance products in the State of Colorado by Allstate through the written agreement signed between the parties. The balance of the allegations are denied as written.

15. Paragraph 16. The allegation is denied for lack of knowledge.

16. Paragraph 17. The allegation that Mr. Cruz was provided training by Allstate is admitted. The balance of the allegation is denied for lack of specificity and lack of knowledge.

17. Paragraphs 18 and 19. The allegation that Allstate advertises its insurance products is admitted. The balance of the allegations in the paragraphs are denied for lack of specificity and lack of direct knowledge.

18. Paragraph 20. The allegations in paragraph 20 are denied for lack of knowledge concerning. Allstate's reliance and total business philosophy.

19. Paragraphs 21 and 22. The allegations in paragraphs 21 and 22 are denied for lack of knowledge and specificity, except it is admitted that Mr. Cruz had access to certain confidential information about insureds for whom he provided insurance services when he became an Allstate agent, so long as he had access to the Allstate network.

20. Paragraph 23. The allegations in paragraph 23 are admitted to the extent that Mr. Cruz agreed to kept confidential certain information that was of a confidential nature. The balance of the allegations are denied for lack of knowledge, lack of specificity and because such are conclusionary.

21. Paragraph 24. The allegations in paragraph 24 are denied for lack of knowledge concerning. what all EA's agree to do.

22. Paragraph 25. The allegations in paragraph 25 are denied for lack of knowledge and such are speculative and conclusionary.

23. Paragraph 26. The allegation that Mr. Cruz became an Allstate agent on April 1, 2010 is admitted. The balance of the allegation is denied for lack of knowledge.

24. Paragraph 27. The allegation that Mr. Cruz was an Allstate agent from April 1, 2010 to August 26, 2020 is admitted. The balance of the allegation are denied and it is specifically asserted that Allstate wrongfully ended or sought to end the Agency agreement and was in breach of the agreement.

25. Paragraph 28. The allegations are denied for lack of knowledge.

26. Paragraphs 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39. The agreement between the parties speaks for itself and if the exact language quoted appears in the agreement then such language is admitted as being in the agreement. The agreement contains mutual obligations and Allstate was the party who breached the agreement.

27. Paragraph 40 as alleged is admitted.

28. Paragraph 41. It is admitted that the letter, Attachment B, is the letter that purportedly terminated the relationship between the parties. The balance of the allegations are denied.

29. Paragraphs 42, 43, and 44. The allegations are denied.

30. Paragraphs 45 and 46. The allegations are denied.

31. Paragraph 47. It is admitted that Mr. Cruz initially did not transfer the telephone number, but subsequently agreed to the transfer and has executed paper work for the transfer, transfer was completed.

32. Paragraph 48. It is admitted that Allstate has made certain demands about confidential information, return of property, and transfer of the phone. Mr. Cruz has informed Allstate that he physically possesses no confidential information, he has no property that Allstate supplied and that he is willing to transfer the telephone number. He has also executed paperwork for the transfer, transfer was complete.

33. Paragraph 49. The allegation that on September 3, 2020 a letter was sent is admitted and that Exhibit C is a copy of the letter. The letter speaks for itself.

34. Paragraph 50 and 51 are denied as to the allegations stated.

35. Paragraph 52. The allegation that Mr. Cruz threatened to call the police on September 15, 2020 concerning removing a sign is admitted. The balance of the allegation as written is denied.

36. Paragraph 53, 54, 55. The allegations are denied. Mr. Cruz specifically asserts he has not retained Allstate confidential information, he has not retained Allstate property, and he has offered and agreed to transfer the telephone number and has

executed paperwork for the transfer. Mr. Cruz is also not soliciting Allstate customers, or used confidential information to solicit Allstate customers.

37. Paragraph 56 and 57. The allegation that Mr. Cruz on September 30 sent an e-mail to certain insured persons is admitted. The e-mail speaks for itself and is Exhibit D. Any specific language quoted, if accurate, is admitted. The balance of the allegations are denied.

38. Paragraph 58. It is admitted that Mr. Cruz informed the recipients that he would no longer be working for Allstate and that he would be working elsewhere. The balance of the allegations are denied.

39. Paragraph 59, 60, 61, 62, 63, 64 as alleged are denied.

40. Paragraphs 65, 66, 67 as alleged are denied.

41. Paragraph 68 as alleged is denied for lack of knowledge.

42. Paragraphs 69, 70, 71. The statements are argument, and the allegations are speculative and not necessarily accurate or true and thus denied.

43. Paragraph 72 and 73. The allegations are denied.

44. Paragraph 74 is a reassertion of prior allegations and the prior responses to those paragraphs and allegation are reasserted.

45. Paragraphs 75 and 76. The allegations are admitted.

46. Paragraph 77, 78, 79, 80. The contract between the parties speaks for itself. If the language of the contract is correctly quoted or stated such language is admitted. The balance of the allegations are denied.

47. Paragraph 81 is denied, and it is affirmatively asserted that Allstate breached the contract and failed to perform.

48 Paragraph 82. The allegation is denied.

49 Paragraph 83. The allegation is denied as stated.

50 Paragraph 84. The allegation is denied.

51 Paragraph 85. The allegation is denied since Mr. Cruz does not possess Allstate property or confidential information.

52. Paragraph 86. The allegation is denied since the telephone number is Mr. Cruz's phone number. Mr. Cruz has agreed to transfer the number and executed paperwork for the transfer. The original phone number 303-465-9500 from Allstate book of business purchase is still with prior broker/agent- Kyle Insurance Group.

53. Paragraph 87, 88, 89 and 90. The allegations concerning Mr. Cruz soliciting customers is denied, well as the allegations of breach. The agreement between the parties speaks for itself.

54. Paragraph 91. The allegation is denied.

55. Paragraph 92 is legal argument, and such is denied, if a response is necessary.

56. Paragraph 93, 94, and 95. The allegations are denied.

57. Paragraph 96, 97 and 98. The allegation are assertions of a right to a remedy and it is disputed that Allstate is entitled to the remedy.

58. Paragraph 99 realleges prior allegations, which have been responded to and which are reasserted.

59. Paragraph 100. The responses to 17 and 21 are reasserted.

60. Paragraph 101. The allegation in paragraph 101 is non-specific and is denied. Allstate when it provides insureds' names and other information to various services losses confidentiality and the allegation is denied on that bases.

61. Paragraph 102 is legal argument and therefore is denied and also denied for lack of knowledge.

62. Paragraphs 103, 104, 105, 106. The allegations are denied.

63. Paragraphs 107, 108, 109, 110, and 111 is legal argument and a request for a remedy. Mr. Cruz disputes that Allstate is entitled any relief and to the remedies sought.

64. Paragraph 112 realleges prior allegations, which have been responded to and which are reasserted.

65. Paragraph 113. Mr. Cruz admits that he had access to some confidential information. The balance of the allegation is denied for lack of specificity and over generalization.

66. Paragraph 114. Mr. Cruz admits that he had access to some items, but disputes that all such items were treated as confidential by Allstate and that Allstate protected the items as confidential items.

67. Paragraphs 115 and 116. The allegations contain legal argument and not factual allegation. Mr. Cruz disputes the factual allegations in those paragraphs.

68. Paragraph 117. The allegations contain a legal conclusion is not factually based, and the allegations are therefore denied.

69. Paragraph 118, 119 and 120. The allegations are denied.

70. Paragraph 121, 122, 123, 124 and 125. These paragraphs contain remedy allegations, and such remedies are not justified and are disputed. Any factual allegations are denied.

71. Mr. Cruz disputes the claims for remedies under the Wherefore provisions.

**AFFIRMATIVE DEFENSES**

1. First Affirmative Defense: Allstate breached the agreement with Mr. Cruz by fabricating a claim that he was brokering insurance. This fabrication was a breach of the covenant of good faith and fair dealing that is an implied term in contracts.

2. Second Affirmative Defense: Allstate's actions in breach of the covenant of good faith and fair dealing were because Mr. Cruz had engaged in prior protected Whistleblowing activity against a federal regulated entity, and such retaliation was illegal and contrary to public policy.

3. Third Affirmative Defense: Allstate breached the contract with Mr. Cruz by failing to provide the contractually required 90-day notice before terminating the agreement with Mr. Cruz.

4. Fourth Affirmative Defense: Allstate wrongfully removed Mr. Cruz's right to carry on his business during the 90-day contract notice period and what he did was reasonable and consistent with his rights under contract and an attempt to mitigate the harm caused by the wrongful actions of Allstate. 5. Fifth Affirmative Defense: Allstate has unclean hands.

6. Sixth Affirmative Defense: Allstate released information that it claims was confidential in the public domain or allowed confidential information to be released in the public domain defeating any claim of confidentiality or trade secret for that information.

7. Seventh Affirmative Defense: Allstate is estopped by its action and conduct.

8. Eighth Affirmative Defense: The equities favor Mr. Cruz, not Allstate.

9. Ninth Affirmative Defense: Allstate should be barred from asserting the claims it is making.

10. Tenth Affirmative Defense: Allstate caused its own injuries.

11. Eleventh Affirmative Defense: Failure to comply with a condition precedent to end or terminate the contract or business relationship was required, which term was not met.

12. Twelfth Affirmative Defense: Lack of Jurisdiction. The Court lacks jurisdiction over this matter. The claims of trade secret violations are false and fabricated. The common law claim for breach is far less than $75,000.

13. Thirteenth Affirmative Defense: Bad Faith in that all or some of the claims of Allstate are made in bad faith.

14. Fourteenth Affirmative Defense: Allstate's ending the contract with Mr. Cruz was a violation of Colorado or Federal law and public policy including laws prohibiting discrimination and retaliation for person engaging in Whistleblowing activity.

## COUNTERCLAIMS

Defendant, John Cruz alleges and asserts as his counterclaims the following:

### I. GENERAL BACKGROUND ALLEGATIONS

1. Mr. John Cruz was born in Brooklyn, New York and is of Hispanic Puerto Rican heritage. He identifies as a person of Hispanic origin and heritage. He is proud of his origin and has informed Allstate management personnel of his origin and heritage.

2. Mr. Cruz moved to the State of Colorado in calendar year 2010 and purchased an Insurance Agent's book of business with the approval of Allstate from Kyle Insurance Group, which became effective on April 1, 2010. He paid $265,000.00 for the purchase.

3. On April 1, 2010 Mr. Cruz executed an Allstate R3001S Exclusive Agency Agreement, which has been appended to the Complaint filed by Allstate in this matter.

This document is re-incorporated by reference. Allstate's representative also signed this document on April 1, 2010.

4. Prior to coming to Colorado, Mr. Cruz had been employed by HSBC in New York. He held the position of Vice President and Relationship Manger with HSBC. In the course of his duties, he discovered illegal money laundering schemes and other fiscal improprieties by HSBC. Mr. Cruz began reporting this illegal activity and was fired from his position with HSBC.

5. In calendar year 2011 Mr. Cruz published a book entitled "World Banking, World Fraud: Using Your Identity" that exposed how international banks launder money and commit other fraudulent financial violations of the law and then cover-up the illegal activity.

6. Mr. Cruz turned over numerous documents supporting the allegations of illegal activities of HSBC and others to public media sources, and federal officials.

7. In September 2018 Mr. Cruz published a second book entitled "Whistlerblower Bloodmoney" that not only detailed the illegal financial activity in international banking, but also exposed regulatory and governmental inaction and non-responsiveness of government in correcting the illegal financial activity.

8. From 2010 through the end of 2019 Mr. Cruz successfully operated his insurance agency, regularly meeting various quotas and goals set by Allstate.

9. For calendar year 2019 Mr. Cruz received a 1099-Misc. income form from Allstate showing that $186,765.43 was paid to Mr. Cruz by Allstate from the sale of Allstate insurance and products. These payments were commission payments that were due Mr. Cruz under the Exclusive Agency Agreement.

10. Allstate Insurance Company (Allstate) is a wholly owned subsidiary of Allstate Corporation. Allstate Corporation is a publicly traded corporation that is subject to requirements of the Sarbanes-Oxley (SOX) Act, as amended, including the anti-retaliation provisions. Allstate Insurance Company does business in the State of Colorado and sells insurance products to Colorado consumers, frequently using agents who are exclusively the agents and representatives of Allstate.

11. John Cruz is currently licensed as a Residential Producer, license number 350508 by the State of Colorado, Division of Insurance. His license is active. Mr. Cruz also holds a Series 63 license with federal authorities to engage in the business of securities. Mr. Cruz has not been convicted of any crime.

## II. ALLEGATIONS RELATING TO WRONGUL ENDING OF BUSINSS AND NON-PAYMENT

12. After the publication of Mr. Cruz's second book representatives of Allstate began making statements to Mr. Cruz that Allstate did not want Mr. Cruz because he was Whistleblower and that he was not wanted because he had blown the whistle on HSBC.

13. These statements were originally made by Melissa Andrews, Field Sales Leader.

14. Mr. Cruz in 2019 also received a call from Melissa Andrews about his posting a sign in the windows of the business about his second book. Mr. Cruz was instructed to take down the sign. Mr. Cruz had disclosed on his Outside Business Activity form he submitted to Allstate that he was an author who published books. His book had no information that was disparaging to Allstate. 15. Mr. Cruz posted another sign in his business window concerning getting information about knowing the truth about financial

corruption through a website. That website had no disparaging information about Allstate. Mr. Cruz was ordered to take down that sign by Ms. Andrews.

16. Neither of the signs posted by Mr. Cruz used or contained any reference to any service mark, or trade name of Allstate. The two signs were not advertising material or promotional material for any of the Allstate products. These signs were only expressions of First Amendment thought and speech rights.

17. On January 22, 2020 Allstate, through Richard Poduska, Territorial Sales Leader for the West Central Region, issued a letter to Mr. Cruz. This letter did not criticize or claim that Mr. Cruz's sales performance was deficient or claim that Mr. Cruz was not properly servicing his customers who had bought Allstate products. The letter did not claim that Mr. Cruz was doing business as a "Broker" selling the products of other insurance companies.

18. The January 22, 2020 letter focused on the signs that directly or indirectly related to Mr. Cruz's whistleblowing and exposing financial corruption.

19. Mr. Cruz for the first 8 months in 2020 continued to receive commission payments from Allstate of approximately $14,000.00 to $15,000.00 per month for Allstate products that insureds and customers had purchased through Mr. Cruz and his agency.

20. In July 2020 Mr. Cruz met with Brian Mitcham, who, to Mr. Cruz's understanding, replaced Melisa Andrews as the Field Sales Leader. The meeting with Mr. Mitchum was cordial and at no time in the meeting did Mr. Mitchum indicate a concern that Mr. Cruz was brokering or selling products of other insurance companies or somehow improperly not fully representing Allstate.

21. What was discussed in the meeting was the impact of the COVID virus on the company business and Allstate's decision, that had received substantial publicity, about closing offices and restructuring. Mr. Mitchum advised Mr. Cruz that shutdowns had started, and that Allstate was no longer going to have a region based in Denver. During the conversation, Mr. Mitchum told Mr. Cruz that Mr. Mitchum's job was in question and that he was unsure what they (Allstate) thought about Mr. Cruz. Mr. Mitchum agreed to a statement by Mr. Cruz that he wasn't liked because Mr. Cruz was a whistleblower of HSBC bank. Mr. Mitchum also confirmed other statements made by Mr. Cruz concerning his negative image at Allstate because he was whistleblower of HSBC bank.

22. Mr. Cruz also discussed with Mr. Mitchum in the meeting that he had a large number of leads because Travelers had increased policy rates and that Farmers was leaving Colorado and Farmers' agents were having contracts canceled. Mr. Cruz also discussed that his daughter was going to work in the business soon and had just gotten her license.

23. Between July 1, 2020 and August 26, 2020 no one contacted Mr. Cruz about any concern that he was broking business or improperly selling products for a company other than Allstate. Mr. Cruz was not brokering business.

24. On August 26, 2020 Richard Poduska appeared at Mr. Cruz's business office in Broomfield, Colorado. He was accompanied by Mr. Mitchum. Mr. Poduska handed Mr. Cruz a letter allegedly terminating the Allstate R30001S Exclusive Agency Agreement.

25. This letter indicated that the reasons for terminating the agreement included unauthorized brokering. Mr. Poduska verbally claimed that Mr. Cruz had placed policies into other agencies and under other products not solicited by Allstate.

26. This claim of brokering is untrue and contrived.

27. Mr. Cruz was provided no documentation or support for the allegation that he had engaged in unauthorized brokering.

28. Mr. Poduska in the meeting of August 26, 2020 affirmatively told Mr. Cruz that the termination date would be December 1, 2020. He additionally advised Mr. Cruz that the termination date was 90 days starting the first of next month, meaning September 2020. The conversation was recorded by Mr. Cruz.

29. Mr. Poduska in the meeting told Mr. Cruz that he could receive TPP payment after 90 days or he could sell his book of business. Mr. Poduska explained that Mr. Cruz had 90 days to find a qualified buyer for his business that was approved by Allstate or on December 1, 2020 the agent number would be terminated and the TPP process would begin for what Mr. Cruz invested.

30. On August 26, 2020, Mr. Poduska, with the assistance of Mr. Mitchum, shut down and disabled Mr. Cruz's access to the Allstate data-based system. The disabling of the system prevented Mr. Cruz from getting information on his accounts and customers and cut off all trade secret information that existed on the Allstate system. Mr. Poduska informed Mr. Cruz that "Everything will be shut down." He indicated all access to personal information or Allstate customer information will be revoked.

31. Mr. Poduska and Mr. Mitchum collected Allstate's property from the office, leaving no trade secret or confidential information behind. Mr. Cruz surrendered his business cards to these individuals.

32. Following the meeting of August 26, 2020 Allstate stopped making commission payments to Mr. Cruz.

33. The Exclusive Agency Agreement signed by Mr. Cruz specifies that the compensation that Mr. Cruz is entitled to is commissions specified in a Supplement. The agreement further indicates that the Company reserves the right to change the commission schedule but that it (the company-Allstate) will provide written notice of change of at least ninety (90) days prior to the date on which the change is to be effective.

34. Allstate gave Mr. Cruz no written notice of any change in the commission schedule in 2020 prior to December 1. 2020. On December 1, 2020 a notice of change in the Commission schedule was provided that was effective on March 1, 2021.

35. The Exclusive Agency Agreement also states in relevant part that Mr. Cruz has an economic interest, as defined in the Agreement and incorporated Supplement and EA Manual, in his customer accounts developed under the Agreement. The agreement also indicates that Mr. Cruz had the right to transfer his economic interest.

36. Cutting Mr. Cruz off from accessing the Allstate system prevented Mr. Cruz from information concerning his economic interests, payments from the customer accounts developed under the agreement including what payments were made on the accounts, what commission was due on the payments made, whether any of the customers were being given consideration for delaying payments because of COVID or other critical information.

37. Allstate's action in depriving Mr. Cruz of critical information concerning customer accounts substantially interfered with his economic interest in the accounts and substantially impaired his ability to sell his economic interest for a fair market value or price.

38. Allstate has made no termination payment to Mr. Cruz which according to his termination letter was due 90 days after issuance of the termination letter if he did not sell his business interest.

39. The termination payment was referred to as TPP by Mr. Poduska in the August 26, 2020 meeting with Mr. Cruz and Mr. Poduska indicated that Mr. Cruz had a right to receive the TPP payment, if he didn't sell his business interest.

40. Following the termination of the Exclusive Agency Agreement by Allstate, policy holders, or some of them who were Mr. Cruz's customers, have been told by Allstate employees or agents and representatives of Allstate false and disparaging information about Mr. Cruz. The information provided to Mr. Cruz by one customer was that an Allstate agent said that Mr. Cruz was a criminal and that Allstate got rid of him and not to talk to Mr. Cruz. Mr. Cruz was told by another client that Allstate told her that Mr. Cruz had lost his insurance license and had to leave the state, leaving clients hanging. Another customer told Mr. Cruz that Allstate had told the customer that Mr. Cruz was terminated for crimes and to stay away from Mr. Cruz.

41. On information and belief Allstate has taken other steps to disparage Mr. Cruz, and or to cause licensure problems with the State and other regulators, Mr. Cruz has received communications from the Department of Regulatory Agencies (DORA) and from FINRA, which inquiries appear to have been caused by information coming from Allstate.

42. The actions of Allstate as set forth above have been taken willfully, maliciously, and intentionally and taken with a reckless disregard of the rights and financial interest

that Mr. Cruz has pursuant to the Exclusive Agency Agreement, and other rights that Mr. Cruz has under the law.

### III. CAUSES OF ACTION

#### A. First Cause -Breach by Non-Payment of Commissions

43. Mr. Cruz realleges and incorporates by reference paragraphs 1-42 above, as if set forth in specificity.

44. Mr. Cruz was entitled to receive commissions on the book of business that was generated through his Agency, pursuant the Exclusive Agency Agreement and supplements to the agreement.

45. Allstate failed and refused to pay commissions to Mr. Cruz from September 2020 forward.

46. Mr. Cruz was entitled to receive commission payments on payments made to Allstate for policies and products that were generated through Mr. Cruz's agency, which payments occurred through either November 30, 2020 or through the time that Allstate repurchases Mr. Cruz's financial or equity interest in the book of business by making the TPP payment or payments.

47. Mr. Cruz is unable to specifically quantify the amount due because he has been deprived of records or access to records by Allstate terminating access to its records that would reflect the payments and Allstate has failed to provide any accounting to Mr. Cruz has to what has been paid or what is due.

48. Allstate is liable and indebted to Mr. Cruz for commissions that he was entitled to receive plus interest on those commissions.

#### B. Second Cause – Unjust Enrichment for Commission Non-Payment

49. Paragraphs 1- 48 are realleged and incorporated as if set forth in specificity.

50. Allstate, in refusing to pay Mr. Cruz commissions from August 26, 2020 forward on the book of business revenue generated by Mr. Cruz's agency, has been unjustly enriched and has deprived Mr. Cruz of compensation for the work he has performed and for the acknowledged economic interest that he has in the book of business derived from his Agency.

51. Allstate is indebted to Mr. Cruz for the amount of the withheld commissions.

52. Allstate would be unjustly enriched by keeping the money that should be rightfully paid to Mr. Cruz.

53. Allstate is liable to Mr. Cruz for the unpaid commission under the principle of unjust enrichment.

**C. Third Cause- Breach of Contract – Payment for Ending Agency Agreement**

54. Paragraphs 1- 53 are realleged and incorporated as if set forth in specificity.

55. The Exclusive Agency Contract between Allstate and Mr. Cruz and Supplemental provisions to the contract provide a right for Mr. Cruz to sell his interest in the Agency or be paid by Allstate for his interest in the Agency.

56. Allstate was obligated to pay Mr. Cruz for his interest in the Agency if Mr. Cruz was unable to sell the Agency with 90 day from Allstate giving notice of termination.

57. Allstate has failed to pay Mr. Cruz any compensation for his interest in the Agency and more than 90 days have passed and Mr. Cruz has been unable to sell his interest in the Agency because of the actions of Allstate as alleged above.

58. Mr. Cruz in 2010 paid $265,000.00 to purchase the Agency from an insurance broker, Kyle Insurance Group, William Kyle.

59. The value of the Agency for purposes of compensation by Allstate to Mr. Cruz for ending the Exclusive Agency Contract is at least $265,000.00 or a higher figure.

60. The failure to pay Mr. Cruz for ending the Exclusive Agency Agreement is a breach of Contract and Allstate is liable to Mr. Cruz.

61. Allstate's liability to Mr. Cruz is the greater of the marketable value of the Agency as of August 25, 2020 before the Exclusive Agency Agreement was terminated or $265,000.00.

62. Allstate is also liable to Mr. Cruz for interest on the amount payable for terminating the Exclusive Agency Agreement.

### D. Fourth Cause - Breach of the Implied Covenant of Good Faith and Fair Dealing

63. Paragraphs 1-62 are realleged and incorporated as if set forth in specificity.

64. Colorado recognizes that in a contract there is an implied term of good faith and fair dealing.

65. The Exclusive Agency Contract that was signed by the parties to this action was prepared exclusively by Allstate and the terms were not negotiable. Further, the contract terms specifically allow for supplementation and alteration by Allstate without providing any additional consideration and without providing full disclosure. The terms of contract are terms of adhesion and the parties were in an unequal bargaining position.

66. Allstate at all times under the Exclusive Agency Agreement had a legal obligation to act in good faith and to engage in fair dealing with Mr. Cruz.

67. Allstate termination of the Exclusive Agency Agreement with Mr. Cruz was not taken in good faith and did not comply with fair dealing principles.

68. Allstate fabricated a claim that Mr. Cruz was brokering business. Mr. Cruz was
not brokering business.

69. Allstate's motivation for terminating the Exclusive Agency Agreement with Mr.
Cruz was that he was a Whistleblower or had engaged in whistleblowing activity that
was protected activity under federal law.

70. This wrongful motivation was also mixed with a discriminatory intent and animus
base on Mr. Cruz being of Hispanic origin.

71. Allstate breached the implied covenant of good faith and fair dealing with Mr.
Cruz by:

a. terminating the agency without providing advance notice and allowing Mr. Cruz a
fair opportunity to sell the Agency.

b. fabricating the reason for termination.

c. retaliating against Mr. Cruz for being a whistleblower; and

d. having race or national origin bias and not affording him equal contract rights.

e. Making false allegations to regulatory bodies.

72. Allstate also breached the covenant of good faith and fair dealing by fabricating
lies about Mr. Cruz being convicted of a crime, having been terminated by Allstate for
being convicted of a crime, and having left the State of Colorado and not servicing
customers.

73. Allstate is liable to Mr. Cruz for financial harm caused Mr. Cruz for the breach of
the covenant of good faith and fair dealing, including commissions that were not paid or
would have been paid but for the termination of the agreement, the fair market value of

the Agency and book of business prior to the termination, and other economic costs and losses.

### E. Fifth Cause-Defamation

74. Paragraphs 1-73 are realleged and incorporated as if set forth in specificity.

75. Allstate through its employees and agents have defamed Mr. Cruz and damaged his reputation in the communities in which he has and is working.

76. The defamation includes telling individual Allstate customers and possibly others that Mr. Cruz has been convicted of a crime or that he is a criminal.

77. Additional defamation has occurred in telling individual Allstate customers that Mr. Cruz had abandoned customers and customer needs. This would implicate or would be a violation of professional duties.

78. This defamation occurred after August 26, 2020.

79. The statements made about Mr. Cruz being a criminal or engaging in criminal activity are false statements and such statement bear directly on Mr. Cruz character and his professional standing and reputation in the community.

80. The statements made about Mr. Cruz abandoning customers are false statements and bear directly on Mr. Cruz's professional reputation and standing in the community.

81. The false defamatory statements referenced above were made knowing such to be false, or made with a reckless disregard of the truth, or made with deliberate indifference to the truth of the matters.

82. The false defamatory statements were made maliciously with an intent to harm Mr. Cruz.

83. Mr. Cruz has been damaged and is threatened with additional damage from the defamatory statements.

84. The aforementioned defamatory statements caused and threaten to cause reputational damage, and loss of income earnings. The actions have caused Mr. Cruz emotional upset, distress and anxiety.

85. Allstate is responsible for the defamation and has authorized the defamation, approved of, or ratified the defamation.

86. Allstate is liable to Mr. Cruz for all damages caused by the defamation. Mr. Cruz is entitled to injunctive relief to prevent further reputational attacks and assaults.

## F. Sixth Cause Discrimination Violation 42 U.S.C. 1981

87. Paragraphs 1-86 are realleged and incorporated by reference.

88. Mr. Cruz is a person of Hispanic origin. He is a member of a protected group or class for purposes of 42 U. S. C. Section 1981. Manzanares v. Safeway Stores, Inc. 593 F2d 968 (10th Cir., 1979).

89. 42 U.S.C Section 1981 provides all persons shall have the same right in every State and Territory to make and enforce contracts as is enjoyed by white citizens.

90. The protections of 42 U.S.C. Section 1981 are applicable to private party contracts.

91. Mr. Cruz was known by Allstate to be a person of Hispanic origin.

92. Allstate's management personnel who interacted with the Plaintiff from 2010 through August 26, 2020 were all white persons.

93. On information and believe all persons involved in the decision making to terminate Mr. Cruz's Exclusive Agency Agreement were white persons.

94. On information and belief and to Mr. Cruz's knowledge from working in the Allstate system for 10 or mor years, no white person who had an Exclusive Agency Contract with Allstate ever had his or her contract terminated based on fabricated allegations, as experienced by Mr. Cruz.

95. On information and belief and to the knowledge of Mr. Cruz, no white person who had an Exclusive Agency Contract with Allstate was deprived of the opportunity to obtain a fair market value for his assets and book of business in a termination situation, by cutting off all information on customer contracts, cutting off monthly payments and other relevant information needed to get a fair market value purchase price, nor were white persons deprived of getting paid compensation known as TPP.

96. Allstate denied to Mr. Cruz equal contract rights than were afforded to white persons, who had Exclusive Agency contracts, including rights to know about claims of misconduct, the right to dispute such claims, and the right to fair and proper compensation when the Exclusive Agency Contract ended or was terminated.

97. Allstate was motivated in whole in part by the fact that Mr. Cruz was Hispanic. Mr. Cruz was looked or viewed by Allstate as being different or unequal because of his race or ethnicity.

98. Allstate's actions were in violation of 42 U.S.C section 1981 in that the actions deprived Mr. Cruz of equally contractual rights as white persons or white citizens.

99. Mr. Cruz as a result of the wrongful discriminatory actions and conduct is entitled to recover economic damages and other damages for the injuries caused. Mr. Cruz. Mr. Cruz was damaged economically, and he suffered emotional upset, humiliation and anxiety from the actions of Allstate. He also suffered reputational damage.

100. Mr. Cruz in addition to compensatory damage is entitled to recover punitive damages, attorney fees and costs.

## G. Seventh Cause - Conversion

101. Paragraphs 1-100 are realleged and incorporated by reference.

102. When Allstate took Mr. Cruz's book of business and gave it to another agent/broker. Mr. Cruz was then entitled to specific payments pursuant to the termination provisions of the agreement.

103. When Allstate terminated the agreement, Mr. Cruz was entitled to receive commissions on the products he had sold until such time as his economic interest was repurchased by Allstate.

104. The commissions generated by the policies Mr. Cruz sold are his property. The specific payments Mr. Cruz is entitled to by virtue of Allstate taking his book of business are Mr. Cruz's property.

105. On February 9, 2021, Mr. Cruz, through counsel requested the return of his property that was in Allstate's possession and control,

106. Allstate's possession and control of Mr. Cruz's property is without legal authorization.

107. Allstate refuses to return Mr. Cruz's property.

## Eighth Cause – Civil Theft

108. Paragraphs 1-108 are realleged and incorporated by reference.

109. When Allstate took Mr. Cruz's book of business and gave it to another agent/broker, Mr. Cruz was then entitled to specific payments pursuant to the termination provisions of the agreement. Allstate has exercised control over money belonging to Mr. Cruz,

100. Mr. Cruz in addition to compensatory damage is entitled to recover punitive damages, attorney fees and costs. Please also see  Exhibit A EEOC complaint

### G. Seventh Cause - Conversion

101. Paragraphs 1-100 are realleged and incorporated by reference.

102. When Allstate took Mr. Cruz's book of business and gave it to another agent/broker. Mr. Cruz was then entitled to specific payments pursuant to the termination provisions of the agreement.

103. When Allstate terminated the agreement, Mr. Cruz was entitled to receive commissions on the products he had sold until such time as his economic interest was repurchased by Allstate.

104. The commissions generated by the policies Mr. Cruz sold are his property.  The specific payments Mr. Cruz is entitled to by virtue of Allstate taking his book of business are Mr. Cruz's property.

105. On February 9, 2021, Mr. Cruz, through counsel requested the return of his property that was in Allstate's possession and control.

106. Allstate's possession and control of Mr. Cruz's property is without legal authorization.

107. Allstate refuses to return Mr. Cruz's property.

### Eighth Cause – Civil Theft

108. Paragraphs 1-108 are realleged and incorporated by reference.

109. When Allstate took Mr. Cruz's book of business and gave it to another agent/broker, Mr. Cruz was then entitled to specific payments pursuant to the termination provisions of the agreement.  Allstate has exercised control over money belonging to Mr. Cruz.

6. Award Mr. Cruz attorney fees as permitted under the law, including 42 U.S.C. Section 1988.

7. Award Mr. Cruz interest pursuant to statute at the highest available rate and from the earliest possible time.

8. Award Mr. Cruz costs as allowed by statute.


**DEFENDANT DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Respectfully submitted this _28_ day of June, 2021.