IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03139-NYW-MEH

ALLSTATE INSURANCE COMPANY,

      Plaintiff,

v.

JOHN CRUZ,

      Defendant.

---

## RECOMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

      The parties have filed their respective Motions for Summary Judgment. ECF 191 (Plaintiff); 196 (Defendant).

      Defendant was an agent selling Plaintiff's insurance products. The parties had an Exclusive Agency Agreement ("Contract"). Plaintiff alleges breach of that Contract among other causes of action. In addition to two counterclaims for breach of contract (non-payment of commissions at Count I; seeking payment for ending the agency agreement at Count III), Defendant brings counterclaims for unjust enrichment (Count II), breach of the implied covenant of good faith and fair dealing (Count IV), defamation (Count V), and discrimination in violation of 42 U.S.C. § 198 (Count VI). ECF 40 at 16-20. Plaintiff seeks partial summary judgment in its favor on its first claim for breach of contract, and summary judgment in its favor on all of Defendant's six

counterclaims. Defendant seeks summary judgment in his favor on Plaintiff's breach of contract claim and all his counterclaims.[1]

For the following reasons, I respectfully recommend granting Plaintiff's Motion and denying Defendant's Motion.

## **FINDINGS OF FACT**

Cross motions for summary judgment are examined under the usual Rule 56 standards, with a court viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *Denver Inv. Advisors, LLC v. St. Paul Mercury Ins. Co.*, No. 17-CV-00362-MEH, 2017 WL 3130923, at *1 (D. Colo. July 24, 2017). The following facts are undisputed[2] unless otherwise cited.

1.      Allstate provides insurance including property and casualty insurance, and other financial products and services to individuals and businesses in the State of Colorado. ECF 191 at 1.

2.      In addition to providing these products and services directly to customers, Allstate appoints exclusive agents ("EAs"), through its Exclusive Agency Program, to sell Allstate products.  *Id.*

3.      EAs are not employees of Allstate but are independent contractors.  ECF 191 at 2.

---

[1] Although Defendant states he is seeking summary judgment on all of Plaintiff's claims, he does not address Plaintiff's Count II for violation of the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq*., and its Count III is for misappropriation of trade secrets in violation of the Colorado Trade Secrets Act, Colorado Revised Statute §§ 7-74-101 *et seq.* ECF 1.

[2] *See infra,* regarding the standard applicable to Defendant's responses to Plaintiff's undisputed facts.  I have considered his responses and find the summary in Plaintiff's reply brief (ECF 210 at 2) to be an accurate accounting of the deficiencies of Defendant's responses under Fed. R. Civ. P. 56(c), the Court's Civil Practice Orders and Standards, and applicable case law.

4.      EAs exclusively sell Allstate products; they cannot sell insurance products from carriers other than Allstate, except in limited circumstances and only if those products from other carriers are pre-approved by Allstate through Allstate's Ivantage program.  *Id.*

5.      Before they receive their appointments from Plaintiff, all EAs are required to first enter into an exclusive agency agreement with Plaintiff that sets forth the terms and conditions of the EA's relationship with Plaintiff. *Id.*

6.      In April of 2010, Defendant purchased a book of business from Bill Kyle and signed the Contract with Plaintiff. *See* ECF 191-1 at 2; 191-2 at 7.

7.      William Kyle was an Allstate EA, who sold his economic interest in the Allstate books of business he serviced to Cruz. ECF 205-10.  Prior to terminating his EA Agreement, Kyle did not work for any independent agency, did not sell or services any policies for any other carriers, and did not have any customers in the Allstate books of business that had policies with insurance carriers other than Allstate. *Id.*

8.      Defendant operated his Exclusive Agency at 7510 US Highway 287 in Broomfield Colorado from approximately April 2011 through the date his EA Agreement terminated on August 26, 2020. ECF 191 at 7.

9.      While operating as an EA, Defendant also engaged in outside business activities as an author. Specifically, Defendant published two books entitled, "Whistleblower Bloodmoney" and "World Banking World Fraud, Using Your Identity," both of which related to his work for HSBS Bank and certain alleged criminal activity Defendant claims to have uncovered.  ECF 191 at 7.

10.     In 2012, Defendant's wife opened an independent insurance agency, later known as Colorado Premier Insurance ("CPI"), which sold property and casualty products on behalf of other carriers in competition with Allstate.  *Id.*

11.     Pursuant to the terms of the Contract, Defendant could sell Plaintiff's insurance products as an Exclusive Agent and had access to confidential information, including:

> Business plans of the Company; information regarding the names, addresses, and ages of policyholders of the Company; types of policies; amounts of insurance; premium amounts, the description and location of insured property; the expiration and renewal dates of policies; policyholder lists and any policyholder information subject to any privacy laws; claim information and certain information and materials identified by the Company as confidential or information considered a trade secret as provided herein.

ECF 191-1 at 5.

12.     The Contract specified that "[a]ll telephone numbers used in connection with business conducted pursuant to this [Contract] are property of the [Plaintiff]." *Id.* at 6.

13.     In limited circumstances, the Contract allowed Defendant to sell pre-approved insurance products from other carriers. *Id.* at 2. It states that Defendant could not "either directly or indirectly, solicit, sell, or service insurance of any kind for any other company agent, or broker, or refer a prosect to another company, agent, or broker, without prior written approval of the [Plaintiff]." *Id.*

14.     Allstate EAs may refer customers to independent agencies to the extent the business cannot be written through Allstate. If an Allstate EA provides customer information, such as contact information, with the referral, such information is provided only with the customer's consent. ECF 205-3 through 6.

15.     As part of the Contract, Defendant also agreed to abide by the Supplement for the R3001 Agreement ("Supplement"), the IC Manual, and the Allstate Agency Standards, all of which are expressly incorporated into the Contract.  *Id*. at 3.

16.     The Contract may not be modified except by written agreement between Allstate and the EA which expressly states that it modifies the Contract and "no other written statements, representations, or agreements and no oral statements representations or agreement will be effective to modify Contract." *Id*. at 3-4.

17.     In October 2019, Plaintiff received an email from another Allstate agent reporting "we have a new customer who was working with an Allstate agent who brokers her business. We just wrote the home and auto and she said she need[s]to call her Allstate agent to cancel her Safeco policy. The agent is John Cruz and we have a recorded call that states he brokers her other lines of business. What do we need to do to report an agent who is also running an independent agency??" ECF 191-11 at 2.

18.     Allstate leaders immediately forwarded the information to Allstate's Human Resources Producer Agency Relations Team ("HR Part" or "Investigative Services"), an independent department at Allstate responsible for conducting investigations related to the allegations against EAs, for review. ECF 191 at 8.

19.     Plaintiff investigated the complaint and found that "[t]he weight of evidence is sufficient to support the conclusion that R3001S Exclusive Agent John Cruz is brokering for other carriers and he could not provide a credible explanation on his involvement with these carriers." ECF 192-3 at 5.

20.     For example, Defendant had several emails in his Allstate account related to customers' Travelers and Safeco policies and emails that suggested he was working on behalf of CPI. ECF 191 at 9.

21.     Defendant had an email he received from an Allstate customer asking about the renewal date on his Progressive policy, and another email from another Allstate customer in which she is forwarding an email she received from jon@copremierins.com attaching "Your Safeco Insurance Documents" to Defendant at his Allstate email address and asking Defendant questions about how her paying off a loan will affect her Safeco policy. *Id.*

22.     The Contract also allowed Defendant to refer potential clients to independent agencies "as long as [he] ha[d] no involvement with the referral business other than to give out names, addresses and phone numbers." ECF 191-1 at 2; 192-1 at 9. The Contract noted that "the referral of business to an independent agency in which you have either a direct financial interest or an indirect financial interest (e.g., spouse has ownership interest) is not considered gratuitous and is not authorized." ECF 191-1 at 2; 191-5 at 9.

23.     Defendant routinely referred business to CPI, the insurance agency owned by his wife. ECF 191-2 at 16.

24.     The Contract may be terminated in three ways: (1) at any time by mutual agreement of the parties in writing; (2) by either party with ninety days' written notice if termination is without cause; and (3) by Allstate immediately if the termination was for cause, including cases of breach of the Contract, fraud, forgery, or misrepresentation of conviction of a crime. ECF 191-1 at 9.

25.     Following its internal investigation, Plaintiff accepted Investigative Services' August 3, 2020 recommendation for termination and terminated its Contract with Defendant on August 26,

2020, indicating the reason for termination as "for cause" on the basis of "unauthorized" brokering in breach of the Contract. ECF 191-15 at 2; 191-16 at 2; 191-17 at 1.

26.     If the Contract terminates, it provides that Defendant would be entitled to compensation for any new and renewal business processed up to an including the date of termination of the Contract, and business processed up to the termination date. ECF 192-1 at 8.

27.     Defendant received a payment of $14,321.71 on September 18, 2020, which was his final commission payment for the new and renewal business processed up to the date of termination. ECF 191-20 at 2.

28.     Although Plaintiff terminated Defendant for cause, it gave him ninety days to sell his or her economic interest in the book of business to a purchaser that must be approved by Plaintiff. ECF 192-1 at 29. Plaintiff's Termination Letter to Defendant indicated that the sale of Defendant's economic interest in the book of business must be completed on or before December 1, 2020. ECF 191-17 at 2.

29.     Under the terms of the Contract, if Defendant does not sell his book of business, he may elect to receive a Termination Payment from Plaintiff. ECF 192-1 at 40.

30.     The Contract also requires that upon termination, Defendant must (1) return of all property belonging to Plaintiff, (2) cease representing himself as an agent or representative of Plaintiff, and (3) cease using any phone numbers used for operation of his Exclusive Agency and execute an order of transfer of responsibility for any such numbers to Plaintiff or any party Plaintiff designates. ECF 191-1 at 9.

31.     When Allstate terminates an EA Agreement immediately for cause, it is Allstate's standard practice to immediately revoke the EA's and his or her employees' access to Allstate systems. ECF 191 at 6.

32.     On August 26, 2020, Territorial Sales Leader ("TSL") Richard Poduska and Field Sales Leader ("FSL") Brian Mitchum went to Defendant's Allstate Exclusive Agency location and delivered the termination letter to him.  Defendant refused a request from Poduska and Mitchum to transfer the phone number for his Exclusive Agency. ECF 191-16 at 2.

33.     In the days following the Contract's termination, on August 27, 2020, December 2020, February 2021, and July 30, 2021, the number Defendant used to operate his Allstate Exclusive Agency was called by Poduska's colleague, Allstate EA Catherine Davis, and the Chief Executive Officer of Telepathy Networks Penny Silvis, respectively. ECF 191-24 at 1; 191-23 at 2; 191-25 at 2.    Poduska noted that the line was not forwarded to the "CCC" and Davis reported that "[a] woman answered the phone and confirmed the number I had called was Cruz's agency. She also confirmed that the agency could help with servicing Allstate policies." ECF 191-24 at 1; 191-23 at 2. Silvis reported that "[t]he woman who answered identified herself as "Trisha" and said that I had reached Colorado Premier Insurance." ECF 191-25 at 2.

34.     The Termination Payment is contingent upon Defendant not soliciting the purchase of products or services in competition with those sold by Plaintiff from any location within one mile of the agency sales location at the time the Contract is terminated. ECF 191-1 at 9; 192-1 at 9; 192-2 at 4.

35.     On September 30, 2020, a month after his termination, Defendant sent an email from johncruz@copremierins.com to several Allstate customers. ECF 191-27 at 2. Defendant wrote:

"[y]ou may have noticed that Allstate has been making lots of changes recently. If you Google 'Allstate cuts' you will see articles related to drastic cuts in management and agents." *Id.* He continued, "I have been informed that Allstate is in the process of terminating my office . . . " and that "I am in the process of transitioning to working as an insurance agent with my family's insurance brokerage called Colorado Premier Insurance; to continue being an insurance agent with a broader range of services and multiple insurance companies." *Id.*

36.     Cruz used an Allstate customer list to compile the list of customer emails to send the September 30, 2020 solicitation email. ECF 205-11.

37.     Plaintiff's Termination Letter to Defendant indicated that his Termination Payment is "conditioned upon, for example, compliance with the confidentiality and non-solicitation provisions that survive termination of the [Contract] and the immediate return of all [Plaintiff's] property." ECF 191-17 at 2.

38.     Following termination of Defendant's EA Agreement, as required by applicable regulations, Plaintiff submitted notices to the Financial Industry Regulatory Authority ("FINRA") and the Colorado Division of Insurance on Cruz's termination.  ECF 191-21 and -22.

## LEGAL STANDARDS

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome

of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil

Procedure specifically require a certain type of admissibility, *i.e.,* the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005).

Defendant is proceeding *pro se* in this case. "A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). "The *Haines* rule applies to all proceedings involving a *pro se* litigant, including . . . summary judgment proceedings." *Id.* at n.3 (citations omitted). However, the court cannot be a *pro se* litigant's advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir.1994). This includes the court's local rules. *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992).

On summary judgment, the court has no duty to search the record on behalf of a litigant to find evidence supporting the litigant's summary judgment interests. *See Cross v. Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (explaining that, on a motion for summary judgment, "'it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record'" and the district court has no obligation "to comb the record in order to make [the plaintiff's] arguments for him' " (first quoting *Downes v. Beach*, 587 F.2d 469, 472 (10th Cir. 1978); then quoting *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000)).

This same standard applies in *pro se* cases. *See Handy v. City of Sheridan*, 636 Fed. Appx. 728, 2016 WL 66170, at *13 n.15 (10th Cir. Jan. 6, 2016) (affirming summary judgment against a *pro se* plaintiff, stating that the district court had no duty to review the record independently for

evidence that might negate summary judgment, and concluding the district court did not err by failing to consider evidence that the *pro se* plaintiff attached to his Complaint but did not cite in his opposition to summary judgment (citing *Cross*, 392 F.3d at 1290)); *McKinzy v. I.R.S.,* 367 Fed. Appx. 896, 897 (10th Cir. 2010) (affirming summary judgment against a *pro se* plaintiff who alleged generally that disputed issues of material fact precluded summary judgment but failed to identify any part of the record to support his claim because "'[j]udges are not like pigs, hunting for truffles buried in briefs.'" (quoting *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995)).

The Court may deem as admitted a party's statements of fact if not properly controverted. The Tenth Circuit approves such treatment of uncontroverted factual assertions on summary judgment. *See Taylor v. Pepsi–Cola Co.*, 196 F.3d 1106, 1108 n.1 (10th Cir. 1999) (noting that the district court deemed defendant's submitted facts as admitted because plaintiff did not controvert them as the local rules required); *see also Coleman v. Blue Cross Blue Shield of Kan., Inc.*, 287 Fed. Appx. 631, 635 (10th Cir. 2008) (affirming summary judgment and agreeing "with the district court that it is not the court's responsibility to conduct a fishing expedition of plaintiff's affidavit or any other record evidence in order to support the assertions made in her [summary judgment] response," and holding that the district court "was correct to admit all facts asserted in [defendant's] summary judgment motion that are not controverted by a readily identifiable portion of the record" (citation and internal quotation marks omitted)).

## <u>ANALYSIS</u>

Under Colorado law, to establish a claim for breach of contract, a plaintiff must prove the following elements: (1) the existence of a contract, (2) performance by the plaintiff or some

justification for nonperformance, (3) failure to perform the contract by the defendant, and (4) resulting damages. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Additionally, "the terms of a contract must be expressed with a reasonable certainty." *Am. Min. Co. v. Himrod-Kimball Mines Co.*, 235 P.2d 804, 807 (Colo. 1951).

Here, the parties do not dispute the existence of the Contract. ECF 191; 209. Defendant admits that he signed it on April 1, 2010, ECF 191-2 at 23, but disputes that he failed to perform the Contract. Defendant also argues in his Motion that Plaintiff breached the Contract by failing to issue his Termination Payment. ECF 196 at 5. Plaintiff does not dispute that it did not make a Termination Payment but argues that Defendant's breach of the Contract excused its non-payment. ECF 191 at 24. In turn, Defendant argues that the provision that would excuse Plaintiff's non-payment of the Termination Payment is unenforceable under Colorado law. ECF 209 at 5.

## I.   Plaintiff's Breach of Contract Claim

Plaintiff argues three instances of an undisputed breach by Defendant: (1) soliciting Plaintiff's customers; (2) operating a competing business,[3] and (3) failing to return Plaintiff's phone number. ECF 191 at 17-22. Regarding the third instance of breach, Plaintiff points the Court to the provision of the Contract stating that upon termination of the Contract, Defendant must "*immediately* return all property belonging to the [Plaintiff]" and "*immediately* cease to use such telephone numbers referenced in Section IX." ECF 191-1 at 9 (emphasis added). Section IX of the Contract specifies that "[a]ll telephone numbers used in connection with business conducted

---

[3] Plaintiff's motion for preliminary injunction (to enjoin Defendant from soliciting Plaintiff's customers and using its confidential information and telephone number to retain or obtain new customers for his competing insurance business) was denied.  ECF 59.

pursuant to this [Contract] are the property of the [Plaintiff]." *Id.* at 6. In Colorado, courts must look to the plain and ordinary meaning of contract provisions. *Chacon v. Am. Fam. Mut. Ins. Co.*, 788 P.2d 748 (Colo. 1990). Thus, I find that the Contract required Defendant to return to Plaintiff the phone number that he used as an EA for Plaintiff upon termination of the Contract.

Here, Plaintiff provides evidence that Defendant never returned its phone number in the form of three separate declarations. ECF 191-24 at 1; 191-23 at 2; 191-25 at 2. In response, Defendant contends, and provides his own affidavit for the same, that he attempted to transfer the phone number, but it had been placed on a fraudulent hold by the phone carriers. ECF 209-16 at 2. Defendant never argues that the phone number at issue was returned to Plaintiff, and he does not dispute that it is the property of Plaintiff. *See* ECF 209. It is undisputed that Defendant did not return the phone number to Plaintiff once the Contract terminated and that he continued to use that number for his competing business for nearly a year following the termination of his Contract.

Under Colorado law, "[a] party has substantially performed when the other party has substantially received the expected benefit of the contract." *Stan Clauson Assocs., Inc. v. Coleman Bros. Const., LLC*, 297 P.3d 1042, 1045 (Colo. App. 2013). Here, regardless of whether Defendant attempted to transfer Plaintiff's phone number, Plaintiff did not receive the benefit of using and controlling its phone number according to Defendant's own affidavit. *See* ECF 209-16 at 2. According to Defendant's own exhibit, he told Plaintiff "I'm not forwarding my phones. Not until I get paid." ECF 196-8 at 4. Defendant provides no case law to support the assertion that his attempts to transfer the number either constitutes substantial performance or does not constitute a material breach. Thus, Defendant's failure to substantially perform its duties under the Contract

constitutes a breach. *See Stan Clauson Assocs., Inc. v. Coleman Bros. Const., LLC*, 297 P.3d 1042, 1045 (Colo. App. 2013).

I find no genuine issue of material fact as to Defendant's breach of the Contract arising from Defendant's failure to return the phone number and recommend granting summary judgment for Plaintiff's breach of contract claim in that regard.

Plaintiff further argues that the Defendant violated the non-compete provision of the Contract, and sets forth evidence that first, Defendant was selling insurance at the location of the agency within the year of the Contract's termination, and second, Defendant was soliciting Plaintiff's customer's that he serviced as an Allstate EA to purchase competing insurance policies and services from his wife's insurance company after termination of the Contract and during the one year non-solicitation period.

Defendant argues that the non-compete provision is void as a matter of law. Plaintiff argues that the non-compete provision is valid and enforceable under Colorado law because it is narrowly tailored to prevent misappropriation of trade secrets, and limits Defendant from competing for only one year and only in a one mile radius of his prior agency location. Contract at XVII, D, ECF 191-1 at 9-10.

Colo. Rev. Stat § 8-2-113 provides "[a]ny covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for an employer shall be void" unless that covenant fits into one of four defined exceptions. Colorado law treats non-solicitation clauses as covenants not to compete. *See, e.g., Saturn Systems, Inc. v. Militare*, 252 P.3d 516 (Colo. App. 2011). The protection of trade secrets is an exception to the prohibition against restrictive covenants. Colo. Rev. Stat. § 8-2-113 (2)(b). The interpretation of

the language in a contract is a matter of law, as is the question of whether the contractual provision is enforceable. *Ball Dynamics International, LLC v. Saunders*, 2016 WL 10859782, * 4 (D. Colo. Nov. 14, 2016). To determine the applicability of the trade secret exception in this case, the Court considers (1) whether the non-compete provision is justified, and (2) the reasonableness of the non-compete provision's effect. *Mgmt. Recruiters of Boulder, Inc. v. Miller*, 762 P.2d 763, 766 (Colo. App. 1988).

The restrictive covenant provision here is narrowly tailored in time and geographic scope. Admittedly, the covenant does not mention confidential information or trade secrets, nor is the restriction contained within any clause aimed at protecting trade secrets. *See* Contract at IV, and XVIII. ECF 191-1 at 4-5, 9-10; *Colorado Accounting Machines, inc. v. Mergenthaler*, 44 Colo.App. 155, 609 P.2d 1125, 1126 (1980). Yet reading the Contract, specifically, reading the "Obligations Upon Termination of Agreement" section in conjunction with the "Company Property, Confidentiality" section, supports the conclusion that one purpose of the noncompetition provision was to protect trade secrets and confidential information. *Great Am. Opportunities, Inc. v. Kent*, 352 F. Supp. 3d 1126, 1136 (D. Colo. 2018) (citing *USF & G v. Budget Rent-A-Car*, 842 P.2d 208, 213 (Colo. 1992) ("The meaning of a contract is found by examination of the entire instrument and not by viewing clauses or phrases in isolation.").

In determining whether a noncompetition covenant fits within the "trade secrets exception" of § 8.2.113(2), Colorado courts apply a two-prong test: "[t]he trial court must first examine the factual situation to determine whether a restrictive covenant is justified at all," in other words, if there is a trade secret. *Mgmt. Recruiters of Boulder, Inc. v. Miller*, 762 P.2d 763, 766 (Colo. App.

1988). "The trial court must then examine the specific terms of the noncompetition clause to determine the reasonableness of their effect." *Id.*

Under the Colorado Uniform Trade Secrets Act, a trade secret is defined as:

[T]he whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value. To be a 'trade secret' the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes.

Colo. Rev. Stat. § 7–74–102(4). The factors to consider in recognizing a trade secret include (1) the extent to which the information is known outside the business, (2) the extent to which it is known to those inside the business, *i.e.,* by the employees, (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information, (4) the savings effected and the value to the holder in having the information as against competitors, (5) the amount of effort or money expended in obtaining and developing the information, and (6) the amount of time and expense it would take for others to acquire and duplicate the information. *Porter Industries, Inc., v. Higgins,* 680 P.2d 1339 (Colo. App.1984). What constitutes a trade secret is a question of fact for the trial court. *Network Telecommunications, Inc. v. Boor–Crepeau*, 790 P.2d 901 (Colo. App.1990).

Plaintiff contends, and Defendant admits, that post-termination, Defendant took a full customer list containing contact information for the Allstate customers he serviced as an EA. This list is a unique compilation of information that could only be obtained through Plaintiff's systems. When asked how he complied a list of people to send his post-termination email to, Defendant testified, "[f]rom the book of business I bought from Bill Kyle." ECF 205-11 at 4. This supports a finding that the listing of names and contact information was "of value" under the statute.

Moreover, the uncontroverted record evidence shows that Plaintiff takes steps to protect this information, including educating its EAs about protecting confidential information, keeping its databases password protected and only accessible on a need to know basis, having its EAs and the EAs' employees sign agreements which have confidentiality obligations, and putting in place safeguards to alert Allstate if confidential information is being improperly sent outside the systems. ECF 205-7 at 5, 11; 205-8 at 8. Any sharing of customer information, including contact information, with a referral to an outside agency, is only done with the customer's consent. ECF 205-3, 205-4 and 205-5.

Defendant contends that he did not purchase trade secrets, and that Plaintiff permits the "selling" of such information in exchange for gift cards. He further contends he purchased a business from a third party (Bill Kyle), who he claims was not affiliated with Allstate. The evidence does not support this. After a careful review of the record, there is no genuine issue of material fact that occasionally an Allstate EA may receive a gift card from independent agencies as a thank you for the referral. Kyle was an EA and did not work for any other agency.

In addition, Defendant was provided with ninety days to sell his economic interest in the Allstate book of business, which was not required by the Contract because Defendant was terminated for cause. There is no genuine issue of material fact that as a result of his post-termination conduct which violated the Contract, Plaintiff did not pay Defendant a termination payment.

Accordingly, I recommend that the motion for partial summary judgment be granted to the extent Plaintiff relies upon the violation of the post-termination restrictive covenant and non-solicitation provision.

## II.    Defendant's Counterclaims for Breach of Contract

A.   Termination for Cause

In his briefing in support of his motion for summary judgment, Defendant maintains that he never breached the Contract. ECF 196 at 3. As explained supra, I recommend otherwise.   In addition, out of an abundance of caution, I note that Defendant does not respond to a number of Plaintiff's stated facts. ECF 191 at 6, 9, 17; 209. Therefore, he concedes that the Contract may be terminated by Plaintiff for cause, and that Plaintiff terminated the Contract for "unauthorized" brokering. ECF 191-1 at 6, 9, 17; 209; *see also Rose v. City of Lafayette, Colo.*, No. 05-cv-00311-WDW-MJW, 2007 WL 485228, at *1 (D. Colo. Feb. 12, 2007) (when plaintiff does not provide a response to defendant's' statements of undisputed facts nor include statement of undisputed or disputed facts, court will accept the facts as set forth in the defendant's briefs as undisputed). As the Supreme Court has held:

> As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007). In short, "a plaintiff may not, in defending against a motion for summary judgment, rest on mere allegations . . . ." *Anderson v. Liberty Lobby*, 477 U.S. at 259; *see also Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998).

B.   The Implied Covenant of Good Faith and Fair Dealing

As an affirmative defense and counterclaim, Defendant alleges that Plaintiff breached the implied covenant of good faith and fair dealing by wrongfully terminating the Contract. ECF 40 at 18. Plaintiff argues that the Colorado Court of Appeals has declined to recognize such a claim. ECF 210 at 13. It cites *Pittman v. Larson Distrib. Co.*, 724 P.2d 1379 (Colo. App. 1986), which found "substantial authority" against implied covenants of good faith and fair dealing in employment contracts. However, it is undisputed that the Contract at issue was an independent contractor agreement, not an employment contract. ECF 191-2 at 10, 24; 209 at 7. Colorado has recognized the implied duty of good faith and fair dealing for independent contractor agreements, like the Contract in this case. *See O'Reilly v. Physicians Mut. Ins. Co.*, 992 P.2d 644, 646 (Colo. App. 1999). *See also Lutfi v. Brighton Cmty. Hosp. Ass'n,* 40 P.3d 51, 59 (Colo. App. 2001) (same).

The terms of the Contract are clear, and thus, I recommend granting summary judgment in favor of Plaintiff as to this claim.  "[T]he implied covenant of good faith and fair dealing may not be used to invalidate contractual terms that the parties negotiated and agreed on, including a right to terminate the contract." *Rocky Mountain Chocolate Factory, Inc. v. SDMS, Inc*., No. 06-cv-01212-WYD-BNB, 2007 WL 4268962, at * 6 (D. Colo. Nov. 30, 2007) (collecting cases); *see also Amoco*, 908 P.2d 493, 498 (Colo.1995) (The duty of good faith and fair dealing "will not contradict terms or conditions for which a party has bargained."). Here, the Contract contained an express manner in which it could be terminated. So long as Plaintiff complied with the contractual provisions for termination, *i.e.* written notice when terminating for cause, Defendant cannot invalidate the express termination provision of the agreement by bringing this claim. *Ohio Ambulance Sols. LLC v. Am. Med. Response Ambulance Serv., Inc.*, No. 22-CV-00661-STV, 2023

WL 2214526, at *5 (D. Colo. Feb. 24, 2023). I agree with Plaintiff that "Cruz does not provide any evidence . . . to combat the evidence put forth by Allstate as to its investigation and legitimate reason for terminating Cruz." Reply ECF 21 at 12. Defendant's only opposition consists of conclusory statements not supported by citation to any evidence.

Defendant further alleges a breach of the implied covenant of good faith and fair dealing arising from Plaintiff's reporting of his termination for cause to FINRA and the Colorado Division of Insurance. ECF 191-21, 191-22. Plaintiff was statutorily required to send notice within thirty days to the Insurance Commissioner of Colorado upon Defendant's termination for cause. C.R.S.A. § 10-2-416. The same requirement is mandated by FINRA Rule 4530. Defendant has not responded with citation to any authority, nor could the Court find any, that would permit a claim for the implied covenant of good faith and fair dealing in this context.

Thus, I recommend granting summary judgment for Plaintiff as to Defendant's counterclaim for a breach of the implied covenant of good faith and fair dealing.[4]

C.   Failure to Pay Termination Payment and Commission

Defendant also argues that Plaintiff breached the Contract by failing to make a payment for "Ending Agency." ECF 196 at 5. Plaintiff responds that it was not required to make a Termination Payment under the Contract because Defendant did not comply with the Contract's post-termination provisions. ECF 191 at 24. Plaintiff relies upon the express terms of a supplemental document incorporated into the Contract, which states "[Termination] Payments are

---

[4] Defendant continually asserts that his Contract with Plaintiff was terminated because he is a whistleblower. ECF 209 at 7. But again, he provides no evidence to support this allegation. Further, he has not brought a claim for retaliation under Title VII, which would not lie in any event given his independent contractor status.

subject to compliance with the terms of the confidentiality and non-competition provisions of the [Contract]." ECF 192-2 at 4.   Defendant may not, "[f]or a period of one year following termination," solicit the purchase of products or services in competition with those sold by Plaintiff "[f]rom any office or business site located within one mile of the agency sales location . . . at the time this [Contract] is terminated." ECF 191-1 at 9; 191-5 at 29, 34, 40.

Plaintiff provides evidence that Defendant breached the non-compete by operating his insurance business from the same location as his Allstate Exclusive Agency. *See* ECF 191-24. Defendant's only response to this allegation is that he was working from home, and he cites to no evidence. ECF 209 at 4. Further, he did not respond directly to statements by Warren Stott, the owner of a neighboring business submitted by Plaintiff. *See id.* Mr. Stott reported that (1) "[t]here is daily foot traffic at [Defendant's] agency location," (2) "[Defendant] maintains a full-time presence at his agency location," and (3) "[Defendant] himself has informed me that, since his affiliation with Allstate ended, he has sold several insurance policies out of the agency location." ECF 191-26 at 3. Therefore, I find Plaintiff exercised its right under the Contract to withhold Defendant's Termination Payment. I recommend granting summary judgment in Plaintiff's favor regarding Defendant's counterclaim for failure to make a payment for "Ending Agency" in breach of the Contact. *See* ECF 196 at 5.

Defendant also argues in his Motion that Plaintiff failed to make a final commission payment to him. ECF 196 at 3. However, his own deposition testimony negates this argument. *See* ECF 191-2 at 58. When asked if he received a final commission payment, Defendant admitted "[t]hat was the month of August, yes." *Id.* Therefore, I find no genuine issue of material fact as to Defendant's breach of contract counterclaims for failure to make commission payments and

recommend granting summary judgment in favor of Plaintiff. *See Ziegler v. Allstate Ins. Co.*, No. 16 CV 869, 2018 WL 1184738 (N.D. Ill. Mar. 7, 2018), *aff'd*, 848 F. App'x 671 (7th Cir. 2021).

### III. Defendant's Remaining Counterclaims for Unjust Enrichment, Defamation, Discrimination Under Section 1981

In Colorado, to establish unjust enrichment, Defendant must prove that (1) at Defendant's expense, (2) Plaintiff received a benefit (3) under circumstances that would make it unjust for Plaintiff to retain the benefit without paying. *Stone Creek Bus. Ctr., LLLP v. Stone Creek-Colorado, LLC*, No. 20-cv-01413-PAB-GPG, 2022 WL 4448822, at *2 (D. Colo. Sept. 23, 2022). In Defendant's initial answer to the complaint, he alleged unjust enrichment based on Plaintiff's failure to pay his commission from the date the Contract terminated. ECF 40 at 16-17. Now, Defendant admits that he wasn't entitled to and additional commission payments. ECF 191-2 at 62. Indeed, the Contract provides that Defendant would be only entitled to compensation for any new and renewal business processed up to an including the date of termination of the Contract, and business processed up to the termination date. ECF 192-1 at 8. Defendant does not dispute that the Contract terminated on August 26, 2020, only that he never breached the Contract. ECF 196 at 3. Therefore, I find no genuine issue of material fact as to Defendant's unjust enrichment counterclaim. I recommend granting summary judgment in favor of Plaintiff and denying summary judgment in favor of Defendant for that counterclaim.

Defendant also asserts a counterclaim that Plaintiff's employees and agents defamed him. ECF 40 at 19-20. To establish defamation, Defendant must prove "(1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special

damages or the existence of special damages to the plaintiff caused by the publication." *Edmond v. Pikes Peak Direct Mktg., Inc.*, No. 11-cv-02021-CMA-KLM, 2013 WL 535579, at *6 (D. Colo. Jan. 17, 2013), *report and recommendation adopted*, 2013 WL 505581 (D. Colo. Feb. 12, 2013) (quoting *Walters v. Linhof*, 559 F. Supp. 1231, 1234 (D. Colo. 1983)). Defendant testified at his deposition that several individuals defamed him and relies on the allegations as stated in his counterclaim. Reliance upon self-serving statements from pleadings does not meet the standard for granting summary judgment.  To the extent the persons making defamatory statements were other exclusive agents, who are independent contractors rather than employees of Plaintiff, this conduct cannot be attributed to Plaintiff.  He also provided in his deposition a handwritten note from a third party that states, "Allstate contacted me stating you was [sic] [t]erminated for crimes you did." ECF 196 at 8; 196-13 at 2. Even if this evidence were reliable (one note is illegible), I find it insufficient to avoid summary judgment.  Defendant's Response does not address Plaintiff's arguments or provide any evidentiary support. Therefore, I recommend granting summary judgment as to Count V of the counterclaim.

Finally, Defendant asserts a counterclaim for discrimination under Section 1981, which prohibits racial discrimination in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)&(b); ECF 40 at 20. Defendant alleges that he is a person of Hispanic origin. ECF 40 at 20; 196-12. To establish a discrimination counterclaim under Section 1981, Defendant must show that Plaintiff "intentionally or purposefully" discriminated against him. *Reynolds v. Sch. Dist. No. 1*, Denver, Colo., 69 F.3d 1523, 1532 (10th Cir. 1995). To meet his burden, Defendant may provide "either direct evidence of discrimination (e.g., oral or written

statements on the part of [Plaintiff] showing a discriminatory motivation) or indirect (*i.e.*, circumstantial) evidence of discrimination." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).

Here, Defendant cites only one piece of evidence, his own deposition, to support his counterclaim for discrimination. ECF 196 at 8; 196-12. He provides no evidence, apart from his deposition testimony, of statements made by Plaintiff that show an arguable discriminatory motive in terminating him.[5] ECF 196 at 8. There is no evidence to support that Defendant was treated differently than other EAs whose Contracts were terminated by Plaintiff for cause. ECF 196. And, to the contrary, Plaintiff provides substantial evidence to prove that it terminated the Contract for "unauthorized" brokering after (1) receiving a complaint that Defendant engaged in unauthorized brokering, (2) conducting an internal investigation of the allegations lodged against Defendant, and (3) finding that "[t]he weight of evidence is sufficient to support the conclusion that [Defendant] is brokering for other carriers and he could not provide a credible explanation on his involvement with these carriers." ECF 192-3 at 5; 191-15 at 2; 191-16 at 2; 191-17 at 1. Even

---

[5] When asked the basis of his discrimination claim at his deposition, Plaintiff answered "[u]sing the word "nigger." Using the word "people of color." "It was general. The general – generally how the – how everything came about in – in the meetings and everything was you – you – you talk to the white people who you know, your Smith, your Forester, your – those people and everything. But you go to the other people of color, your Rodriguez or your Cruz, and then you talk to them totally different, and you belittle them." ECF 196-12 at 2-3. He also refers to other remarks made during the course of his agency. This evidence fails to support a claim for discrimination as it does not show such experiences were connected to or motivated Allstate's decision to terminate the Contract. No reasonable factfinder could find otherwise. I further note that a hostile work environment on the basis of race has not been alleged, even if Plaintiff were Defendant's employer.

more, Plaintiff provides evidence that there are no cases in which an EA is found to have engaged in unauthorized brokering and has not been terminated. ECF 191-3 at 13.

Because "conclusory and self-serving affidavits" like Defendant's deposition statements carry no weight, they need not be considered on a motion for summary judgment. *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184 (10th Cir. 2015). Defendant provides no direct evidence of a discriminatory motive, indirect evidence of discrimination, or evidence that could lead a reasonable jury to disbelieve Plaintiff's proffered explanation for terminating the Contract. *See Tessler v. KHOW Radio, Inc.*, No. 95-B-2414, 1997 WL 458489, at *3, 7 (D. Colo. Apr. 21, 1997). Without "any significant probative evidence" for Defendant's counterclaim of discrimination under Section 1981, the Court recommends denying summary judgment in favor of Defendant and granting summary judgment in favor of Plaintiff. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## CONCLUSION

After careful consideration of the record, I find there is no genuine dispute of material fact as to any claims.   Accordingly, I make the following recommendations:

As to Plaintiff's claim for breach of contract: Granting Plaintiff's Motion for Partial Summary Judgment as to liability at Count I and denying Defendant's Motion for Summary Judgment as to that claim.

As to Defendant's counterclaims granting Plaintiff's Motion for Summary Judgment as to: (1) Defendant's claim of unjust enrichment (Count II); (2) non-payment of commission (Count III); (3) breach of the implied covenant of good faith and fair dealing (Count IV); (4) defamation

(Count V), and (5) violations of §1981 (Count VI), and denying Defendant's Motion for Summary Judgment on the same.

If this Recommendation is adopted, the claims that remain for adjudication are Plaintiff's Count II and Count III and damages for Count I.

For the foregoing reasons, the Court respectfully recommends granting Plaintiff's Motion [filed October 31, 2022; ECF 191] and denying Defendant's Motion [filed October 31, 2022; ECF 196].[6]

Respectfully submitted this 14th day of April, 2023, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge

---

[6] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).